Case 2:21-cv-00108 Document 64 Filed on 01/13/23 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
January 13, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| COREY BRELAND AND KRYSTAL BRELAND, INDIVIDUALLY AND ON BEHALF OF K.L.B., MINOR CHILD (DECEASED), §§§§§ Plaintiffs, § v. § SAM'S EAST, INC., *et al*, §§§§ Defendants. § | CIVIL ACTION NO. 2:21-CV-00108 |

### MEMORANDUM AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

K.L.B., the four-year-old daughter of Plaintiffs Corey and Krystal Breland, was fatally impaled by a metal rod that was part of a toy baby stroller. Plaintiffs, individually and on behalf of K.L.B., have sued Defendants, asserting that the stroller's defective design caused K.L.B,'s death. Plaintiffs allege strict product liability, negligence, and breach of implied warranty claims against Defendants Lissi Dolls and Toys Hong Kong Limited ("Lissi") (the company that produced the stroller), and Sam's East, Inc. ("Sam's East") (the retailer who sold the stroller). Pending before the Court is Sam's East's motion for summary judgment as to all claims asserted against them. (Doc. No. 49.) After review of the filings and relevant law, the undersigned recommends that Sam's East's motion for summary judgment be GRANTED and that Plaintiff's claims against Sam's East be DISMISSED. Sam's East's other pending motions – to designate a responsible third party (Doc. Nos. 50 and 51) and to exclude Plaintiffs' expert (Doc. No. 58) – should be DENIED as moot.

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. *Background.*

#### 1. *K.L.B's tragic death.*

This case arises from a tragic event involving Plaintiffs' decedent, K.L.B, a four-year-old child. (Dkt. No. 49, p. 2; Dkt. No. 52, p. 3.) K.L.B. was playing with a toy stroller that Plaintiffs had purchased from Sam's East, Inc. (Doc. No. 52, p. 3 ¶ 2.1.) Plaintiffs assert that K.L.B.'s father, Plaintiff Corey Breland, was at home watching television while K.L.B. was playing with the stroller and her brother. *See* Doc. No. 39-1, p. 2 ¶ 4.1. Corey Breland reportedly heard K.L.B. scream out; he then turned to look at her and watched as K.L.B. pulled "a metal rod from her rectum." *Id*. Immediately, K.L.B. showed signs of pain. *Id*. at 2-3 ¶ 4.1. Her father rushed her to the fire station and surrendered her to paramedics. *Id*. at 3 ¶ 4.1. The paramedics evaluated K.L.B., noting various signs of suffering, including cold skin temperature, heavy bleeding, and irregular respiratory pattern. *Id*. ¶ 4.2. Upon arrival at the hospital, Emergency Room staff tried to save K.L.B. (Doc. No. 39-1, pp. 4-6 ¶ 4.3.) It was too late: K.L.B. died that same day—August 13, 2019. *Id*. at 6 ¶ 4.3.

On the night of K.L.B.'s death, the Corpus Christi Police Department (CCPD) dispatched officers to the Breland home. (Doc. No. 39-1 at p. 8 ¶ 6.1.) Officers found the stroller on the floor. *Id*. The stroller was missing a set of wheels—this missing set was under the table, "pancaked with a shaft exposed." *Id*. The Nueces County Medical Examiner found no signs of

sexual trauma and determined that K.L.B.'s injuries were consistent with the rod. *Id*. The rod impaled K.L.B., traveling through her intestine and tearing a major artery, causing her to bleed to death. *Id*. A full autopsy confirmed the cause of death was "complications of impaling trauma to the trunk." *Id*. at 9 ¶ 6.2.

### 2. *The stroller.*

The facts pertaining to the stroller itself are uncontested. Although not proven, the rod that caused K.L.B.'s death is believed to be the axle from the stroller's rear-wheel assembly. *See* Doc. No. 39-1, pp. 2-3 ¶ 4.1. The stroller is a Lissi-branded Model 93000 toy stroller ("stroller"). (Doc. No. 49-3, p. 7 (Kam Dep. 21:8–20).) According to testimony by Lissi's 30(b)(6) representatives,[1] New Holly Enterprise Co., Ltd. ("New Holly") manufactured the stroller. *Id*. at 24 (Kam Dep. 90:19–91:2); Doc. No. 49-4, pp. 5, 29-30 (Martin Dep. 16:4–18, 112:18–113.3, 113:17–25)). Lissi's owner-director, Carsten Martin, selected the Lissi Model 93000 stroller during a visit to New Holly's manufacturing facility in China. (Doc. No. 49-4, pp. 6, 30 (Martin Dep. 17:1–7, 114:1–8)).

The stroller is made of metal, plastic, and fabric. (Doc. No. 49-5, p. 2.) The seats are fabric, and there are plastic wheels attached to metal rods. *Id*. Lissi did not change the stroller's construction, but it did change the colors, prints, and patterns applied to the fabric. (Doc. No. 49-4, pp. 5-6, 30-31 (Martin Dep. 16:4–18, 18:13–24, 116:22–117:1); Doc. No. 49-3, p. 24 (Kam Dep. 91:3–15).) According to Mr. Martin, this practice is in accordance with Lissi's ordinary business operations, which include Lissi representatives visiting manufacturing facilities in China; selecting products for Lissi's inventory; "Lissify[ing]" those products with colors and

---

[1] Federal Rule of Civil Procedure 30(b)(6) allows a party to depose an organization's designated representative, who will "testify about information known or reasonably available to the organization."

Lissi's print designs; and selling them to customers like Sam's East. (Doc. No. 49-4, p. 6 (Martin Dep. 18:13–24)).

Although only Lissi designed and applied prints and color schemes to the fabric of the stroller, Sam's East had input about the prints and colors that Lissi applied. (Doc. No. 49-3, p. 24 (Kam Dep. 91:3–92:9); Doc. No. 49-4, p. 30 (Martin Dep. 116:12–117:4).) Indisputably, Sam's East had no input regarding the stroller's structural design, including the use of a metal axle for the rear wheel assembly. (Doc. No. 49-3, p. 24 (Kam Dep. 92:4–13); Doc. No. 49-4, pp. 29-30 (Martin Dep. 112:18–113.3, 113:17–22); *see also* Doc. No. 49-1, pp. 2-3 (Kremers Decl. ¶ 2–5).)

In addition, as a precondition to importation, Sam's East required proof that the Lissi Model 93000 stroller complied with the applicable American Society for Testing and Materials (ASTM) standard—ASTM F963-17. (Doc. No. 49-3, p. 13 (Kam Dep. 47:11–48:7).) Sam's East appointed Intertek, an independent product-testing laboratory, to test exemplar strollers for compliance with ASTM F963-17. *Id.* Lissi arranged for exemplars to be sent to Intertek, submitted the testing application to Intertek, and paid Intertek for the testing. *Id.* at 18, 25 (Kam Dep. 66:16–67:9, 94:17–22). Intertek tested the exemplar strollers and issued a report confirming that the stroller complied with ASTM F963-17. (Doc. No. 49-1, p. 3 (Kremers Decl. ¶ 4).)

Sam's East required that the stroller's use and care instructions be in English, and that they be clear, understandable, and without spelling mistakes. (Doc. No. 49-3, p. 13 (Kam Dep. 45:1–13).) According to Lissi's representatives, Lissi wrote the stroller's warnings and instructions based on ASTM standards. *See* Doc. No. 49-3, p. 11 (Kam Dep. 37:21–38:1, 39:5–

10, 37:18–20); Doc. No. 49-4, p. 9 (Martin Dep. 29:11–18). Lissi submitted its warnings and instructions for the stroller to Intertek for review and approval. (Doc. No. 49-4, p. 9 (Martin Dep. 29:13–18); *see also* Doc. No. 49-3, p. 25 (Kam Dep. 94:5–8).) Intertek approved Lissi's warnings and instructions. (Doc. No. 49-3, p. 12 (Kam Dep. 42:20–25).)

### C. *This case's procedural history.*

Plaintiffs filed this products liability lawsuit in Texas state court in April 2021, and Sam's East removed it to federal court in June 2021 based on diversity jurisdiction. 28 U.S.C. § 1332(a); Doc. No. 1 at 1-2. Plaintiffs seek "all legally compensable damages permitted pursuant to Texas law." (Doc. No. 39-1, p. 16 ¶ 10.1.) This includes damages for "pain and suffering, mental anguish, loss of physical capacity, disfigurement, and reimbursement for all reasonable and necessary medical expenses incurred." *Id*. at 17 ¶ 10.3. Further, Plaintiffs request "fair and just compensation for their loss of consortium, burial and other expenses, and other losses (again, all past and future)." *Id*.

On October 31, 2022, Sam's East filed its motion for summary judgment. (Doc. No. 49.) Plaintiffs filed a response on November 20, 2022. (Doc. No. 52.) On December 9, 2022, Sam's East filed an amended reply in support of their motion for summary judgment (Doc. No. 62), effectively mooting its previously filed reply in support of the summary judgment motion (Doc. No. 57).

Further, on November 12, 2022, Sam's East filed a motion for leave to designate a responsible third party (Doc. No. 50), as well as a motion to supplement that motion (Doc. No. 51). Plaintiffs responded on November 28, 2022. (Doc. No. 55.) On December 5, 2022, Sam's

East filed a reply in support of the motion for leave to file a responsible third party. (Doc. No. 59.)

In addition, Sam's East filed a motion to exclude Plaintiffs' expert (a product safety expert), on November 30, 2022. (Doc. No. 58.) On December 20, 2022, Plaintiffs filed a response to the motion to exclude their expert. (Doc. No. 63.)

### D. Legal standard.

#### 1. Summary judgment.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (*per curiam*) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John*

*W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (*per curiam*).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

### 2. Applicable Texas substantive law.

Because this case is before the Court based on diversity jurisdiction, the Court must apply Texas substantive law and federal procedural law. *Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985) (citing *Hanna v. Plumer,* 380 U.S. 460 (1965); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)). As such, the applicable Texas statutory laws are noted here.

"'Products liability action' means any action against a manufacturer or seller for recovery of damages arising out of . . . death . . . allegedly caused by a defective product whether the

7/17

action is based in . . . strict products liability, negligence, breach of express or implied warranty, or any other theory or combination of theories." Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2). "'Manufacturer' means a person who is a designer . . . of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." *Id*. at § 82.001(4). "'Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." *Id*. at § 82.001(3). Therefore, whether Sam's East should be considered a manufacturer depends on whether Sam's East "designed" a component part of the stroller. *See id*. Alternatively, if the Court finds that Sam's East is a nonmanufacturing seller, not a manufacturer, the Court "must first consider if a § 82.003(a) exception applies, and only if so, should it proceed to consider Plaintiff's common law causes of action." *Gonzalez v. Reed-Joseph Int'l Co.*, No. 4:11-CV-01094, 2013 WL 1578475, at *4 (S.D. Tex. Apr. 11, 2013).

### E. Discussion.

#### 1. *Plaintiffs' claims*.

Plaintiffs assert negligence, breach of implied warranty, and strict product liability claims against Lissi and Sam's East. *See* Doc. No. 39-1, pp. 10-16, ¶¶ 7.1–9.1. Plaintiffs assert that there is "overwhelming evidence" that Sam's East participated in the stroller's design. (Doc. No. 52, p. 14, ¶ 4.7.) Plaintiffs contend that because Sam's East participated in fabric selections for the stroller's front and rear seat and its basket, Sam's East should be considered a "manufacturer," or, in the alternative, be subject to an exception that attaches liability to "nonmanufacturing sellers." *Id*. at 14-15, ¶¶ 4.3–4.4, 4.7. Sam's East acknowledges that it had

"input insofar as it could approve prints and colors that Lissi applied," but argues that this involvement in the design process did not make Sam's East a "designer" under Texas law. (Doc. No. 49, p. 3.)

Originally, Plaintiffs' allegations sought to invoke three of the exceptions under Chapter 82: that Sam's East participated in the design of the stroller (Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(1)); that Sam's East exercised substantial control over the content of warnings and or instructions that accompanied the stroller (*id*. at § 82.003(a)(4)); and that Sam's East had actual knowledge of the alleged defect (*id*. at § 82.003(a)(6)). *See* Doc. No. 39-1, p. 13, ¶ 7.6. Subsequently, Plaintiffs conceded that Sam's East did not have knowledge of the alleged product defects, thus relinquishing any reliance on the § 82.003(a)(6) knowledge exception. *See* Doc. No. 52, p. 22 n.76. Therefore, Plaintiff seeks to invoke the remaining exceptions: that Sam's East participated in the design of the stroller, and that Sam's East exercised substantial control over inadequate instructions or warnings that resulted in harm to the claimant. Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(1), (a)(4).

For the reasons discussed below, the undersigned finds that Sam's East is not a manufacturer of the stroller under Chapter 82 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.001(4). Rather, Sam's East is a nonmanufacturing seller. *See id*. § 82.001(3). A nonmanufacturing seller of a product is not liable for harm caused by that product, absent the claimant establishing one of the exceptions enumerated under § 82.003(a). Because neither of the two exceptions asserted by Plaintiffs applies, summary judgment is appropriate as to all claims asserted against Sam's East.

### 2. Whether Sam's East is a "designer" is not a fact issue. It is a question of law.

Plaintiff argues that the parties' disagreement about whether Sam's East qualifies as a designer is a fact issue that precludes summary judgment relief. (Doc. No. 52, p. 8 ¶ 4.1.) The Court disagrees: this is a question of law. *See Martinez v. Med. Depot, Inc.*, 434 F. Supp. 3d 537, 550 (S.D. Tex. 2020) (Alvarez, J.) (finding on summary judgment that the defendant was an innocent seller and none of the seven exceptions to § 82.003 applied); *Mack v. Deere & Co.*, No. 3:12-CV-00296, 2013 WL 5945079, at *2 (S.D. Tex. Nov. 6, 2013) (Costa, J.) (determining whether any of the § 82.003 exceptions apply during the summary judgment stage). Texas courts view the question similarly. *E.g.*, *Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 544 (Tex. App.—San Antonio 2012) (affirming the trial court's judgment, at the summary judgment stage, that defendant was immune from liability under § 82.003).

### 3. Sam's East did not participate in the design of the stroller.

Plaintiffs allege that Sam's East's selection of prints and colors that Lissi Dolls designed and offered for purchase is sufficient to demonstrate Sam's East participated in the design of the stroller. (Doc. No. 52, pp. 14-15, ¶ 4.7.) Plaintiffs also contend that Sam's East's requirement that the strollers pass United States toy safety standards and internal quality assurance standards "shaped the design process," thus demonstrating that Sam's East was a designer. *Id*. at pp. 15-16, ¶ 4.8. Sam's East responds that, under Texas law, these actions do not constitute participation in the design process and, therefore, liability cannot be attached to Sam's East. (Doc. No. 49, pp. 6-11.) Sam's East is correct.

"Chapter 82 does not expand the pool of potentially liable non-manufacturing sellers beyond those recognized at common law; it *reduces* that pool." *Amazon.com, Inc. v. McMillan*,

625 S.W.3d 101, 109 (Tex. 2021) (emphasis added).  In doing so, it "restrict[s] liability for defective products to those who manufacture them."  *New Texas Auto Servs., L.P. v. De Hernandez*, 249 S.W.3d 400, 405 (Tex. 2008) (footnote omitted).  This protects innocent sellers "from the costs of products liability litigation they are 'drawn into … solely because of the vicarious nature of that liability[.]'"  *Ray v. FCA US LLC*, No. 2:17-CV-86, 2017 WL 3033425, at *4 (S.D. Tex. July 18, 2017) (citing *General Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex. 2006)).

Plaintiffs bear the burden of proving that Sam's East participated in the design of the stroller to be held liable as a nonmanufacturing seller under the § 82.003(a)(1) exception.  *See George*, 36 F.4th at 620.  Under Texas law, the selection of an already-manufactured component of a product does not mean that a retailer has participated in the design of the product such that they could be held liable as a manufacturer.  *Allen v. W.A. Virnau & Sons, Inc.*, 28 S.W.3d 226, 233 (Tex. App.—Beaumont 2000, pet. denied) (where seller of defective tractor was not liable for defective design because selecting manufactured features for a product is not participation in design).  Texas law does not seek to hold nonmanufacturing sellers with attenuated or indirect involvement in the design liable for defects in the final product.  *Rubin v. DaimlerChrysler Corp.*, CIV.A. H044021, 2005 WL 1214605, *7 (S.D. Tex. May 20, 2005) (citing *Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 683 (Tex. 2004) (component-part manufacturer that does not participate "in the integration of the component into the final product" is not liable for defects in the final product)).  Further, "Texas law does not provide a reasonable basis for holding a [seller] liable for a product's defective design because the [seller] provided the manufacturer information about customer … preferences."  *Id*.

11/17

The undisputed summary judgment evidence shows that New Holly made the stroller's fabric. (Doc. No. 49-3, p. 24 (Kam Dep.[2] 91:7–17).) New Holly then sent Lissi the stroller with all components and the fabric. *Id*. (Kam Dep. 91:7–91:22). Next, Lissi selected patterns and colors for the design of the fabric. *Id*. at 7, 24 (Kam Dep. 17:19–18:5, 91:7–92:3). Sam's East merely approved Lissi's fabric design choices. *Id*. at 92:4–9. This evidence, establishing that Sam's East participated in the selection of fabric colors or patterns but not in the structural or functional design components of the stroller, demonstrates Sam's East's mere attenuated and indirect involvement in the stroller's design process. (Doc. No. 49-2, pp. 16-17 (Kremers Dep.[3] 60:6–61:14)). This is the exact type of involvement that Chapter 82 intended to exclude from liability. *See Rubin*, 2005 WL 1214605, at *7.

Further, undisputed evidence shows that Sam's East required third-party testing for compliance with United States toy safety regulations and Sam's East's quality assurance standards before importation. (Doc. No. 49-1, p. 3 ¶ 4; Doc. No. 49-3, p. 14 (Kam Dep. 51:6–10).) Intertek, the third-party laboratory, was an independent testing facility, not Sam's East's agent, and Lissi Dolls (not Sam's East) paid Intertek to conduct the testing. (Doc. No. 49-3, p. 25 (Kam Dep. 94:20–22).) Intertek was responsible for ensuring the stroller met various standards, including toy safety standards, as a prerequisite to its import from China. *Id*. If the product was compliant, Sam's East would accept import. If not, Sam's East would reject import. Plaintiff characterizes these safety standards as "imposing additional requirement[s] for metal components (such as the metal axle that caused the injury to and death of K.L.B.)." (Doc. No.

---

[2] Steven Kam is a manager at Lissi. (Doc. No. 49-3, pp. 2-3 (Kam Dep. 8:11-14).)

[3] Coryn Kremers is a representative for Sam's East. (Doc. No. 49-2, p. 2 (Kremers Dep. 4:17-18).)

52, pp. 15-16 ¶ 4.8 (citing Doc. No. 52-3, p. 16).) In fact, Plaintiffs' referenced standard states that, pursuant to a "visual check", "[t]here shall be no sign of corrosion on the product as received." (Doc. No. 52-3, p. 16.) Plaintiffs do not adequately explain how the presence or absence of corrosion allegedly contributed to K.L.B,'s death or to Plaintiffs' harm in this case.

Nevertheless, Plaintiff insists (without citation to authority), Sam's East cannot be an innocent retailer because Sam's East designed the stroller's fabrics, front and rear seat, and basket, and chose a third-party company to evaluate the stroller, all pre-production. (Doc. No. 52, p. 12 ¶ 4.2.) Plaintiffs assert: "BUT FOR Sam's East, there would never have been this model 93000 toy baby stroller (it would never have been manufactured)." *Id*. at pp. 12-13, ¶ 4.2 (emphasis in original). The uncontested facts prove otherwise—the stroller had already been manufactured prior to Sam's East's discussing its choice of fabric for the stroller. Perhaps it might be true that were it not for Sam's East's purchase decision, the manufactured stroller would not have been evaluated, accepted for import, and introduced into the stream of commerce. But this does not transform Sam's East from the stroller's "seller"[4] into its "manufacturer." The uncontested evidence demonstrates that Sam's East did not "design" the stroller as contemplated by Texas law. This, as a matter of law, means that Sam's East is not the stroller's "manufacturer" under § 82.001(4), and so liability cannot be imposed on Sam's East under § 82.003(a)(1). Summary judgment for Sam's East is therefore appropriate.[5]

---

[4] Under § 82.001(3), a "'[s]eller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof."

[5] Plaintiff attempts to distinguish between the subsection at issue here giving rise to nonmanufacturing seller liability (§ 82.003(a)(1)), which does not require that the participation in the design be the cause of Plaintiffs' harm and § 82.003(a)(4), which does require proximate cause of the harm. (Doc. No. 52, p. 16, ¶ 4.9.) Plaintiffs argue that "[i]f the Texas Legislature had wanted (a)(1) to require 'designs [to be] a producing or proximate cause of the subject incident' (as argued by Sam's East in their MSJ), then the Texas Legislature would have put such language

> ***4. Sam's East did not have control over any allegedly inadequate instructions or warnings. In any event, there is no evidence that any inadequate instructions or warnings caused Plaintiffs' harm.***

Plaintiffs also assert that Sam's East had substantial oversight and control over the instructions and warnings provided with the stroller. (Doc. No. 52, pp. 16-22 ¶¶ 4.9–4.11.) Sam's East claims Plaintiffs do not have any evidence to prove this allegation, arguing that Plaintiffs have not presented a "causal nexus between Sam's East's alleged involvement in the warning and instructions and the incident" as is required to invoke the exception in § 82.003(a)(4). Further, Sam's East contends that Plaintiffs have neither pointed to any specific instructions or warnings that were allegedly inadequate nor cited any record evidence to support such a contention. (Doc. No. 60-1, p. 9 (citing Doc. No. 52, pp. 16-22 ¶¶ 4.9–4.11).) Therefore, Sam's East argues, Plaintiffs have not met their burden of establishing a causal connection between the stroller's allegedly inadequate instructions or warnings and the resulting harm. *Id*. The Court agrees.

Under § 82.003(a)(4), a plaintiff has the burden of proving that: "(A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product; (B) the warning or instruction was inadequate; and (C) the claimant's harm resulted from the inadequacy of the warning or instruction."

Sam's East did not exercise substantial control over the content of any warning or instruction that accompanied the stroller. (Doc. No. 49-1, p. 3 (Kremers Decl. ¶ 8).) Rather, the undisputed evidence shows that Lissi prepared the warnings and instructions and submitted them

---

in (a)(1) – as did the Texas Legislature in TCPRC 82.003(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6)." (Doc. No. 52, p. 24 ¶ 5.3.) Whether Plaintiffs' attempted distinction is valid, however, is ultimately irrelevant, because Sam's East did not "design" any component of the stroller.

14/17

to Intertek for approval. (Doc. No. 49-3, p. 25 (Kam Dep. 94:5–8).) Sam's East did not write the warnings or instructions or have any input concerning their content. *Id*. at 93:3–21. According to Mr. Kam's uncontested testimony, Sam's East did not even look at the warnings or instructions before Lissi sent them to Intertek, nor before Lissi shipped the Model 93000 strollers to Sam's East. *Id*. at 12-13, 25 (Kam Dep. 42:20–43.5, 45:1–14, 93:22–94:16). In an effort to demonstrate that Sam's East controlled the contents of the instructions and warnings, Plaintiffs point to Mr. Kam's testimony that Sam's East required that the use and care instructions be in English and that they be clear and understandable, without errors or spelling mistakes. (Doc. No. 52, pp. 18-19 ¶ 4.1.) Notably, however, Mr. Kam also testified that Sam's East neither determined the content of the warnings or instructions nor wrote those warnings or instructions. (Doc. No. 49-3, p. 25 (Kam Dep. 93:3–94:10).) Further, Plaintiffs do not dispute that Lissi Dolls' in-house designer, not any Sam's East employee, created the assembly instructions. *Id*. at 5 (Kam Dep. 15:9–17). In other words, after Lissi Dolls created and finalized the instructions and warnings, Sam's East merely confirmed that these instructions and warnings were clear and understandable, lacked spelling errors, and were in English. *Id*. at 13 (Kam Dep. 45:1–14).

Neither party contests that Sam's East gave Intertek the responsibility to ensure that Lissi's instructions and warnings complied with Sam's East's company policies and standards. (Doc. No. 52, p. 21 ¶ 4.10.) Plaintiffs, however, argue that this "clear and understandable" standard is the "ultimate control" over the instructions and warnings. *See id*. Plaintiffs are mistaken. Sam's East's perfunctory review of the language of the instructions and warnings is not the "substantial control" required by Texas law. *Cf. Gonzalez*, 2013 WL 1578475, at *9 (finding the plaintiff did not adequately plead substantial control where the plaintiff admitted that

defendants were not responsible for the product warnings); *Martinez*, 434 F. Supp. 3d at 552 (finding no genuine issue of material fact regarding substantial control). Because the language requirements do not demonstrate substantial control over the content of the instructions and warnings, the undersigned concludes that § 83.003(a)(4)'s exception attaching liability to a nonmanufacturing seller does not apply.

Even if Sam's East had substantial control of the instructions and warnings, Plaintiffs have not provided the Court with evidence demonstrating what specific instructions or warnings were allegedly inadequate and caused the harm. Specifically, Plaintiffs have not established any causal connection between the tragedy and Sam East's requirement that the instructions be clear and understandable, spelled correctly, and in English. *See Martinez*, 434 F. Supp. 3d at 552. Plaintiffs' expert, even when expressing criticism regarding the instructions, mentions only Lissi, not Sam's East. (Doc. No. 57-1, p. 4 (Chen Dep. 65:4-12).) This is not enough to attach liability to Sam's East.

Therefore, for the above reasons, the undersigned concludes that Plaintiffs have not met their burden of showing that Sam's East exercised substantial control over the content of any warning or instruction that accompanied the stroller, that such instruction or warning was inadequate, and that the inadequacy of any warning or instruction caused the harm alleged in this case. Accordingly, the exception provided in § 82.003(a)(4) does not apply to Sam's East, and summary judgment for Sam's East is appropriate.

### F. *Conclusion and Recommendation.*

Sam's East is not a manufacturer of the stroller under Chapter 82 of the Texas Civil Practice and Remedies Code. Rather, Sam's East is a nonmanufacturing seller. A

nonmanufacturing seller of a product is not liable for harm caused by that product, unless the claimant establishes one of the exceptions enumerated under § 82.003(a). Because neither of the two exceptions asserted by Plaintiffs applies, summary judgment is appropriate as to all claims asserted against Sam's East.

The undersigned recommends that Sam's East's motion for summary judgment (Doc. No. 49) be GRANTED as to all claims asserted against Sam's East in this case. In addition, the undersigned recommends that Sam's East's motions to designate a responsible third party (Doc. Nos. 50 and 51) and to exclude Plaintiffs' expert (Doc. No. 58) be DENIED as moot.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on January 13, 2023.

MITCHEL NEUROCK
United States Magistrate Judge